Wooster, Respondent, vs. Chicago & Northwestern Railway Company, Appellant.

*January 10—February 5, 1918.*

*Carriers: Interstate commerce: Failure to deliver horses at destination: Misrouting or breach of contract? Jurisdiction of state courts: Delay in transit: Questions for jury: Damages.*

1. Where by the contract of carriage a carload of horses shipped in this state was to be delivered at "Allentown Fair Grounds, Allentown, Pa.," but the delivery carrier left the car at Allentown station, and the shipper was obliged to hire and pay another carrier to transport it to the fair grounds seven miles distant, the claim to recover the amount paid to such other carrier is not based on a misrouting, under the interstate commerce acts, but is a claim for damages based on breach of the contract to deliver the shipment at the destination specified, and is enforceable in the state courts.

2. The question whether defendant, the initial carrier, negligently delayed the forwarding of plaintiff's horses is *held* to have been, on the evidence, one for the jury and to have been submitted under proper instructions as to the promptness and diligence required in such cases.

3. An award of $125 (reduced by the trial court from $175) for injuries to horses caused by negligent delay in transporting them is *held* to be sustained by the evidence.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

This action was commenced in justice's court, and from a judgment there rendered in the plaintiff's favor the defendant appealed to the circuit court, where a trial resulted in the judgment in the plaintiff's favor from which this appeal is taken.

The plaintiff sued to recover damages from the defendant on two counts: (1) for alleged failure of the defendant to deliver a car of horses to an agreed destination, thereby putting the plaintiff to extra expense for the delivery of the horses; and (2) for damages resulting from injuries occasioned the horses by alleged neglect which resulted in delay in transit.

The plaintiff on September 11, 1914, delivered a car of racing horses to the defendant for shipment from Rhinelander, Wisconsin, to the Allentown fair grounds, Allentown, Pennsylvania. The horses were loaded in an Arms palace horse car, from which they were not to be unloaded in transit for feed, water, exercise, or rest. The plaintiff made known to the defendant's agent at Rhinelander his desire to connect with a fast Eastern train leaving Chicago the evening of September 13th. Plaintiff's car arrived in Milwaukee at 2:30 a. m. the morning of the 13th. There the plaintiff informed the agent of the defendant company that he desired to connect with the fast Eastern train leaving Chicago that evening. On the way to Chicago the plaintiff's car was placed on a sidetrack at Rawson, where it was held for about four hours, which resulted in the plaintiff's failure to reach Chicago in time to connect with an outgoing fast train that evening. The horses were thereby delayed at least twenty-four hours in transit between Rhinelander and Allentown, the trip lasting from Friday evening, September 11th, to Thursday evening, September 17th. On the last day, the plaintiff claims, the horses, though usually gentle, became res-

tive as a result of the prolonged confinement and lack of exercise, and two of the stallions injured themselves in stumbling and jumping about, and practically all of the horses were more or less affected.

The car was delivered at Allentown and plaintiff had to arrange for its transportation from Allentown to the "Allentown fair grounds," a distance of seven miles. The tracks of the Lehigh Valley Railway Company extend to the fair grounds, and the plaintiff claims that the defendant had delivered previous shipment of his horses at the "Allentown fair grounds." As a result the plaintiff was put to an expense of $13.20 in having his horses transported from Allentown to the fair grounds.

The jury awarded damages on the second count in the sum of $175. The court held such award excessive, and ordered that a new trial be had unless the plaintiff elect to accept $125 as damages on this count, and, the plaintiff having so elected, judgment was entered for such amount in addition to the $13.20 damages allowed on the first cause of action. From such judgment this appeal is taken.

For the appellant there was a brief by *Edward M. Smart* and *R. N. Van Doren,* attorneys, and *Charles H. Gorman,* of counsel, all of Milwaukee, and oral argument by *Mr. Gorman.*

For the respondent there was a brief by *Grady, Farnsworth & Kenney* of Portage, and oral argument by *Daniel H. Grady.*

SIEBECKER, J.    The contract between the plaintiff and the defendant specifies that defendant received the horses from the plaintiff in an "Arms palace car" at Rhinelander and that they were "to be delivered to *A. T. Wooster* at Allentown fair grounds, Allentown, Pennsylvania." There is no dispute of the facts that the car with the horses was not delivered at the Allentown fair grounds and that the car with the horses was left by the delivery carrier, the Philadel-

phia & Reading Railway Company, at the Allentown station, seven miles from "Allentown fair grounds." It also appears that plaintiff was compelled to engage the Lehigh Valley Railway Company to have the car with horses transported from Allentown station to "Allentown fair grounds," the place of destination and delivery fixed in the contract, and that he was required to pay the sum of $13.20 for such service. This state of facts permits of but one inference, namely, that the defendant failed to deliver the shipment at "Allentown fair grounds" as it had contracted to do, and that the plaintiff, by reason of such breach of contract by defendant, sustained the damage of $13.20 which he incurred as cost for securing delivery of the car and horses at the fair grounds.

This recovery is not a claim for an extra charge for misrouting under the provision of the interstate commerce acts, but is one for damages caused by defendant's breach of its contract for failure to deliver the shipment at the place of destination specified in the contract. Under these facts and circumstances the defendant is liable for breach of contract which is enforceable in the state courts. *Atlantic C. L. R. Co. v. Riverside Mills,* 219 U. S. 186, 31 Sup. Ct. 164; *Galveston, H. & S. A. R. Co. v. Wallace,* 223 U. S. 481, 32 Sup. Ct. 205.

It is contended that the court erred in holding that the evidence permitted of the inference that the defendant was guilty of a want of ordinary care and diligence in delaying shipment of the horses at Rawson, Wisconsin. The record shows that the car arrived at Rawson about 5 o'clock in the morning, and that the first section of the fast freight for hauling freight of this kind to Chicago left Rawson at about 5:45 a. m. and that the second and slower section left Rawson at 10 a. m. The evidence tends to show that the difference in time of leaving Rawson and arriving in Chicago between the first and second sections of this freight resulted in preventing this shipment being sent out of Chicago on a fast freight in

the evening of that day and in placing it upon a slower train out of Chicago, which prolonged the trip on the road from Rawson to destination about thirty-six hours. The court submitted to the jury the inquiry, "Did the defendant negligently delay the forwarding of plaintiff's horses at Rawson?" and instructed them that

"It is the duty of the defendant to exercise a degree of care in moving freight suitable to the nature of the property and forward it with reasonable promptness and dispatch to the extent of its ability," and "In case of live stock a railroad company is bound to use more expedition than in case of ordinary freight, if such may be used in reason under the circumstances existing, because of its nature and character known to both parties at the time the shipment is made. . . . The fact that there were other cars placed for forwarding at Rawson when the first section of the freight picked up fourteen cars, and that the plaintiff's car was not so placed, does not excuse the delay or excuse the nonforwarding by that train, if it appears to you that by reasonable diligence plaintiff's car might have been included with the string picked up or that by reasonable effort and diligence otherwise on the part of the servants of the defendant the same would have been forwarded on such train."

The very nature and character of live-stock shipments requires a degree of attention, care, and diligence different from a shipment of dead freight. This is clearly recognized by the court's instruction in submitting the foregoing inquiry to the jury. We are persuaded that the evidence upon this phase of the case presented an issue for determination by a jury and that the court submitted it to them with a correct statement of the law applicable thereto. The court properly determined upon the verdict rendered that the defendant is liable for any damages proximately caused by the negligent delay in forwarding plaintiff's horses. The contract of shipment limits defendant's liability to the declared valuation of $100 for each horse, and if they are injured from negligence of the defendant "the liability of said railroad company shall

not exceed said valuation." It is contended that the evidence fails to show that the delay in shipment caused the plaintiff's horses any damage. The evidence on the subject is not free from conflict, and the inferences to be drawn from the facts bearing on this question are not so manifest and clear that it can be held to be a pure question of law for determination by the court. We think the issue was properly left to the jury for determination, and their conclusion that the plaintiff sustained damage as the result of the defendant's negligence cannot be disturbed. The trial court held that the contract of shipment limits the amount of recoverable damages to each animal injured to $100, and that the evidence fully sustains the conclusion that the two stallions were damaged in the sum of $100 and that the sum of $25 would compensate plaintiff for care of their injuries and such care as the other horses required and for sums expended by plaintiff for medicines. The court reduced the jury's award accordingly. The plaintiff does not object to this reduction of the amount of damages found by the jury. It is considered that the evidence is sufficient to show that the horses were injured, and the court's determination of this question must stand. We find no reversible error in the record.

*By the Court.*—The judgment is affirmed.